UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff, | CRIMINAL NO. 5:15-13-KKC |
| v. | **OPINION AND ORDER** |
| BENITO SEGURA TOVAR,<br>    Defendant | |
| LORENA LINARES-SANCHEZ,<br>    Claimant | |

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the Statement of Claim and Petition for Adjudication of Claim to certain real property (DE 870) filed by claimant Lorena Linares-Sanchez.

After defendant Benito Segura Tovar pleaded guilty to conspiring to distribute cocaine and marijuana and to commit money laundering, this Court sentenced him to a 188-month term of imprisonment (DE 869, Judgment). Any person convicted of such a crime must forfeit to the United States any property derived from the proceeds of the crime and any property used to commit the crime. 21 U.S.C. § 853(a). Further, title to such property vests in the United States at the time of the commission of the acts giving rise to the forfeiture. 21 U.S.C. § 853(c).

In his plea agreement, Tovar agreed to forfeit all his interest in the property listed in the forfeiture allegation of his indictment. Among the property in the forfeiture

allegation were three pieces of real property: 4436 Damas Rd., Knoxville, Tennessee; 4224 Van Dyke Drive in Knoxville, Tennessee; and 3904 W. Beaver Creek Dr. in Powell, Tennessee.

Prior to his sentencing, the Court entered a preliminary judgment of forfeiture, ordering that the three pieces of real property were forfeited to the United States. Pursuant to 21 U.S.C. § 853(n)(2), Linares-Sanchez filed a petition asserting that she owns 15 percent of the Damas Rd. property; 100 percent of the Beaver Creek property; and 100 percent of the Van Dyke Drive property.

A third-party claimant can prove her entitlement to forfeited property in a few ways. If the claimant's interest in the property arose prior to the commission of the criminal acts giving rise to the forfeiture (and, thus, before title to the property vested in the United States), she must prove by a preponderance of the evidence that she currently has a legal interest in the property and that, at the time of the commission of the criminal acts (when the United States acquired its interest in the property), 1) she was the one that had an interest in the property, not the defendant; or 2) her interest was superior to the defendant's interest. 21 U.S.C. § 853(n)(6)(A).

If the claimant's interest in the property arose after the commission of the criminal acts (and, thus, after the United States acquired its interest in the property), then the she must prove that she was a "bona fide purchaser for value" of her asserted interest in the property "and was, at the time of purchase, reasonably without cause to believe that the property was subject to forfeiture…." 21 U.S.C. § 853(n)(6)(B).

As to evidence that Linares-Sanchez has a legal interest in the properties and when

that interest arose, she testified that she is not on the title or deed to the Damas Road property. For this reason, the Court cannot find that Linares-Sanchez has proved by a preponderance of the evidence that she has a legal right, title, or interest in the Damas Road property.

At the forfeiture hearing, Linares-Sanchez did produce a deed, however, showing that she is the record owner of the Beaver Creek property. No party produced evidence at the hearing that Linares-Sanchez holds title to the Van Dyke property, but the Assistant U.S. Attorney stated that the government did not contest that Linares-Sanchez is the record owner of the Van Dyke property. The AUSA stated that Linares-Sanchez had provided the government titles and deeds to both the Beaver Creek and Van Dyke properties.

As to when Linares-Sanchez acquired title to the properties, the quitclaim deed offered into evidence establishes that Honorio Sanchez quitclaimed the Beaver Creek property to Linares-Sanchez on March 23, 2014. Linares-Sanchez testified that Honorio Sanchez is her uncle. She testified that her uncle also quitclaimed the Van Dyke property to her on June 9, 2014. That testimony was uncontradicted.

Again, the evidence before the Court shows that the criminal activity underlying Tovar's conviction in this case began in September 2014. Thus, Linares-Sanchez asserts that she acquired ownership of both the Van Dyke and Beaver Creek properties before Tovar's criminal activity began and, therefore, before title vested in the United States. There is no evidence that Tovar ever had title to the Beaver Creek or Van Dyke property. Thus, Linares-Sanchez is attempting to prove that she is entitled to the properties under the first method discussed above. She asserts that 1) she has a legal interest in the

3

properties and 2) that, at the time of the commission of the criminal acts, she had title to the properties, and Tovar did not.

While Linares-Sanchez has sufficiently established that she has legal title to the properties, "bare legal title, in the absence of assertions of dominion, control or some other indicia of ownership of or interest in the seized property, is insufficient to confer standing to challenge a forfeiture." *United States v. $515,060.42*, 152 F.3d 491, 498 n. 6 (6th Cir.1998) "The mere assertion of legal title to property may not be sufficient to establish standing, for issues of actual possession, control, and financial stake must also be considered." *Id*. (quoting *United States v. 2511 E. Fairmount Ave*., 722 F. Supp. 1273, 1279 (D. Md. 1989)).

As to dominion and control over the properties, Linares-Sanchez testified that she lives in the Beaver Creek property with her three children and Tovar's nephew. She testified that she has never lived in the Van Dyke property, but that she began renting it out about two years ago. There is no evidence to the contrary. Thus, Linares-Sanchez has established that she has dominion and control over the Van Dyke and Beaver Creek properties.

In addition to legal title and dominion and control over the properties, the Court must also determine whether Linares-Sanchez purchased the property with the proceeds of the criminal activity that gave rise to the forfeiture. "[C]ourts look behind the formal title to determine whether the record title owner is a 'strawman' set up to conceal the financial affairs of illegal dealings of someone else." *United States v. Carrell*, 252 F.3d 1193, 1204 (11th Cir.2001) (citation omitted). "It has been recognized that people engaged

in illegal activities, especially when needing to conceal illegitimate funds and being aware of forfeiture statutes, often attempt to disguise their interests in property by not placing title in their own names." *Id*. (citing *United States v. One 1982 Porsche 928*, 732 F.Supp. 447, 451 (S.D.N.Y.1990)). "A failure to look beyond bare legal title would foster manipulation of nominal ownership . . . ." *United States v. Henry*, No. 94–6188, 1995 WL 478635, at *2 (6th Cir.1995) (citing *526 Liscum Drive*, 866 F.2d at 217). "The rationale for the rule that bare legal title may be insufficient [for standing] is based on a candid determination that things are often not what they appear to be, especially in the world of drug trafficking." *United States v. A Single Family Residence & Real Prop. Located at 900 Rio Vista Blvd., Fort Lauderdale*, 803 F.2d 625, 630 (11th Cir. 1986) (quoting *United States v. One 1977 36 Foot Cigarette Ocean Racer, Fla. Registration No. FL9350CT*, 624 F. Supp. 290, 295 (S.D. Fla. 1985)). "In brief, people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name." *Id*.

Linares-Sanchez's testimony regarding how she acquired the properties at issue was less than clear. She testified that she moved from Kentucky to Tennessee in 2009 or 2010. The Court's understanding from her testimony was that, at that time, the Beaver Creek and Van Dyke properties were owned by a person named Jamie Smith. Linares-Sanchez testified that, at some point after she moved to Tennessee, she began making payments to Smith toward the purchase of the property. In her petition, she states that she has paid approximately $95,000 for the Beaver Creek property over time since sometime in 2007 or 2008. She testified at the forfeiture hearing that she is still making payments on at least the Beaver Creek property. In her petition, Linares-Sanchez states that she paid

approximately $20,000 for the Van Dyke property.

It appears from Linares-Sanchez's testimony at the hearing that Smith transferred title to both the Van Dyke and Beaver Creek properties to Linares-Sanchez's uncle. Linares-Sanchez testified that, even though she made the payments for the properties, she asked her uncle to be the record owner of the properties because he is legally in the United States, and she is not. Linares-Sanchez testified that she did not believe she could own property. She later had the titles transferred to her name.

Linares-Sanchez testified at the hearing that Tovar did not give her cash towards the purchase of the properties, but he did give her "cards" in the amount of $5,000 to $6,000 and she used some of that money to purchase the properties. The Court's understanding was that Tovar received the cards from a tax preparation service, and the cash on the cards represented Tovar's income tax refund.

Linares-Sanchez testified that she has earned income by cleaning homes, working at a car lot, and making meals for farm workers, and that she currently owns a roofing company. She testified that the funds used to purchase the properties at issue here, however, came from the sale of property she owned in Mexico. She testified that she received $60,000 for the sale of the Mexican property, but she was unable to produce any documents regarding this sale and was not able to provide the address of the property in Mexico that she sold. Likewise, she testified that she inherited the property in Mexico from her grandmother, but she provided no documentation to corroborate that.

She testified that the buyer of the Mexican property would give her cash on an irregular basis in irregular amounts, and that she, in turn would pay that cash to the owners

6

of the Tennessee properties. Thus, her payments for the property were also made irregularly and in various amounts. She provided no documentary evidence to corroborate her receipt of payments from the buyers of her Mexican property or her payments for the Tennessee property.

Detective Rob Hart of the Lexington Police Department testified that he executed the search warrant at the Beaver Creek property on February 11, 2015 as part of the investigation that led to Tovar's conviction. He testified that, about a month later, he interviewed Linares-Sanchez who told him the money used to purchase the properties came solely from Tovar.

At the hearing, Linares-Sanchez denied saying this to Detective Hart. Nevertheless, Detective Hart's testimony is more credible than Linares-Sanchez's on this issue. Despite having had ample notice of the hearing, she was unable to provide any evidence to corroborate her ownership of Mexican property, her sale of the property, or her payments to Smith. The absence of written documentation of these transactions is especially odd given the irregular manner that Linares-Sanchez testified she received payments for the Mexican property and that she made payments on the Tennessee properties. It would seem necessary for all parties to such transactions to track all payments and to maintain written evidence of payments that are made.

Furthermore, Detective Hart testified that, on the day he executed the search warrant at the Beaver Creek drive property, the officers found Tovar there along with a kilogram of cocaine, a money counter, drug paraphernalia, more than $200,000 in cash, and various cell phones. This would indicate that Tovar conducted his drug trafficking

activities at the Beaver Creek property, making it more likely that the proceeds of those activities were used to purchase the property. Moreover, the criminal activities underlying Tovar's conviction occurred the same year that Linares-Sanchez acquired title to both the Van Dyke and Beaver Creek properties. *See United States v. Warner*, 968 F.2d 1217, 1992 WL 163258 at * 3 (6th Cir. 1992) (considering in an ancillary proceeding under 21 U.S.C. § 853(n) the fact that the claimant acquired property the same year in which the drug-related activities for which the defendant was convicted began.)

Considering all the evidence, the Court cannot find that it is more likely than not that the funds used to purchase the Beaver Creek and Van Dyke properties came from the sale of property that Linares-Sanchez owned in Mexico. Accordingly, the Court hereby ORDERS that Linares-Sanchez's claim under 21 U.S.C. § 853(n) to the following real property is DENIED:

1) 4436 Damas Rd., Knoxville, TN;

2) 3904 W. Beaver Creek Dr., Powell, TN; and

3) 4224 Van Dyke Dr., Knoxville, TN.

DATED: August 13, 2019

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY